Electronically Filed
6/22/2017 12:24:10 PM
Fourth Judicial District, Ada County
Christopher D. Rich, Clerk of the Court
By: Lori Ferguson, Deputy Clerk

Daniel W. Bower (ISB No. 7204)
Richard S. Bower (ISB No. 8469)
STEWART TAYLOR & MORRIS PLLC
12550 W. Explorer Drive, Suite 100
Boise, Idaho 83706
Telephone:   (208) 345-3333
Facsimile:    (208) 345-4461
dbower@stm-law.com
rbower@stm-law.com

Attorneys for Plaintiff

Hippler, Steven

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT

STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| PACIFIC CREST SERVICES, INC., an Idaho corporation,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN ANDRAOS, an individual; SOUTH WESTERN FINANCIAL NETWORK AND INSURANCE SERVICES, a California corporation,<br><br>Defendants. | Case No.   CV01-17-11722<br><br>**SUMMONS** |

TO THE ABOVE NAMED DEFENDANT:

   **JOHN ANDRAOS**
   **261 STAR LANE DR.**
   **LA CANADA FLINTRIDGE, CA 91011**

SUMMONS – Page 1

**EXHIBIT**

**A**

NOTICE:   YOU HAVE BEEN SUED BY THE ABOVE-NAMED PLAINTIFF.   THE COURT MAY ENTER JUDGMENT AGAINST YOU WITHOUT FURTHER NOTICE UNLESS YOU RESPOND WITHIN 20 DAYS.   READ THE INFORMATION BELOW.

You are hereby notified that in order to defend this lawsuit, an appropriate written response must be filed with the above-designated court within 20 days after service of this Summons on you.  **If you fail to file a written response, the court may enter judgment against you as demanded by the Plaintiff in the Complaint.  A letter to the Judge is not an appropriate written response.**

A copy of the Complaint is served with this Summons.   If you wish to seek the advice or representation by an attorney in this matter, you should do so promptly so that your written response, if any, may be filed in time and other legal rights protected.

An appropriate written response requires compliance with Rule 10(a)(1) and other Idaho Rules of Civil Procedure and shall also include:

1.       The title and number of this case.

2.       If your response is an Answer to the Complaint, it must contain admissions or denials of the separate allegations of the Complaint, and other defenses you may claim.

3.       Your signature, mailing address and telephone number, or the signature, mailing address and telephone number of your attorney.

4.       Proof of mailing or delivery of a copy of your response to the Plaintiff's attorney, as designated above.

5.       To determine whether you must pay a filing fee with your response, contact the Clerk of the District Court, (208) 287-6900.

6.       Your response shall be filed with the Ada County Clerk of Court, 200 W. Front Street, Boise, ID 83702, (208) 287-6900.

SUMMONS – Page 2

7.      You are entitled to be represented by an attorney of your own choosing.   If you are financially unable to employ an attorney, the court shall appoint counsel.   You request counsel by writing the Clerk of the Court, 200 W. Front Street, Boise, ID 83702, (208) 287-6900.

DATED This _____ day of June, 2017.
6/22/2017 12:24:16 PM

CLERK OF THE DISTRICT COURT
CHRISTOPHER D. RICH

L Ferguson
By:   Deputy Clerk

SUMMONS – Page 3

Electronically Filed
6/22/2017 12:24:16 PM
Fourth Judicial District, Ada County
Christopher D. Rich, Clerk of the Court
By: Lori Ferguson, Deputy Clerk

Daniel W. Bower (ISB No. 7204)
Richard S. Bower (ISB No. 8469)
STEWART TAYLOR & MORRIS PLLC
12550 W. Explorer Drive, Suite 100
Boise, Idaho 83706
Telephone:   (208) 345-3333
Facsimile:   (208) 345-4461
dbower@stm-law.com
rbower@stm-law.com

Attorneys for Plaintiff

Hippler, Steven

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT

STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| PACIFIC CREST SERVICES, INC., an Idaho corporation,<br><br>                    Plaintiff,<br><br>vs.<br><br>JOHN ANDRAOS, an individual; SOUTH WESTERN FINANCIAL NETWORK AND INSURANCE SERVICES, a California corporation,<br><br>                    Defendants. | Case No.   CV01-17-11722<br><br>**SUMMONS** |

TO THE ABOVE NAMED DEFENDANT:

**SOUTH   WESTERN   FINANCIAL   NETWORK   AND   INSURANANCE**
**SERVICES**
**JOHN ANDRAOS, REGISTERED AGENT**
**261 STAR LANE DR.**
**LA CANADA FLINTRIDGE, CA 91011**

SUMMONS – Page 1

NOTICE:   YOU HAVE BEEN SUED BY THE ABOVE-NAMED PLAINTIFF.   THE COURT MAY ENTER JUDGMENT AGAINST YOU WITHOUT FURTHER NOTICE UNLESS YOU RESPOND WITHIN 20 DAYS.   READ THE INFORMATION BELOW.

You are hereby notified that in order to defend this lawsuit, an appropriate written response must be filed with the above-designated court within 20 days after service of this Summons on you. **If you fail to file a written response, the court may enter judgment against you as demanded by the Plaintiff in the Complaint.   A letter to the Judge is not an appropriate written response.**

A copy of the Complaint is served with this Summons.   If you wish to seek the advice or representation by an attorney in this matter, you should do so promptly so that your written response, if any, may be filed in time and other legal rights protected.

An appropriate written response requires compliance with Rule 10(a)(1) and other Idaho Rules of Civil Procedure and shall also include:

1.      The title and number of this case.

2.      If your response is an Answer to the Complaint, it must contain admissions or denials of the separate allegations of the Complaint, and other defenses you may claim.

3.      Your signature, mailing address and telephone number, or the signature, mailing address and telephone number of your attorney.

4.      Proof of mailing or delivery of a copy of your response to the Plaintiff's attorney, as designated above.

5.      To determine whether you must pay a filing fee with your response, contact the Clerk of the District Court, (208) 287-6900.

6.      Your response shall be filed with the Ada County Clerk of Court, 200 W. Front Street, Boise, ID 83702, (208) 287-6900.

SUMMONS – Page 2

7.      You are entitled to be represented by an attorney of your own choosing.   If you are

financially unable to employ an attorney, the court shall appoint counsel.   You request counsel by

writing the Clerk of the Court, 200 W. Front Street, Boise, ID 83702, (208) 287-6900.

6/22/2017 12:24:16 PM

DATED This _____ day of June, 2017.      CHRISTOPHER D. RICH

CLERK OF THE DISTRICT COURT

_____
By:   Deputy Clerk

SUMMONS – Page 3

Daniel W. Bower (ISB No. 7204)
Richard S. Bower (ISB No. 8469)
STEWART TAYLOR & MORRIS PLLC
12550 W. Explorer Drive, Suite 100
Boise, Idaho 83706
Telephone:   (208) 345-3333
Facsimile:    (208) 345-4461
dbower@stm-law.com
rbower@stm-law.com

Attorneys for Plaintiff


IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT

STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| PACIFIC CREST SERVICES, INC., an Idaho corporation,<br><br>                 Plaintiff,<br><br>vs.<br><br>JOHN ANDRAOS, an individual; SOUTH WESTERN FINANCIAL NETWORK AND INSURANCE SERVICES, a California corporation,<br><br>                 Defendants. | Case No.<br><br>**COMPLAINT** |

COMES NOW Plaintiff Pacific Crest Services, Inc., ("Pacific Crest" or "Plaintiff"), by and

through its counsel of record, and for its Complaint against Defendants state and allege as follows:

**PARTIES**

    1.    At all times relevant hereto, Pacific Crest was a duly organized and an existing

COMPLAINT – Page 1

Idaho corporation, with its primary place of business in Ada County, Idaho.

2.    Pacific Crest is an insurance alliance that allows independent insurance agents to have access to products from multiple insurance carriers ("Carriers").

3.    Defendant John Andraos is an insurance agent that contracted with Pacific Crest.

4.    At all times relevant hereto, defendant John Andraos has operated an insurance agency under the name South Western Financial Network and Insurance Services. ("SWFNIS"), that is, upon information and belief, a California corporation. Mr. Andraos and SWFNIS are referred to herein collectively as "Defendants."

## JURISDICTION AND VENUE

5.    The Court has subject matter jurisdiction over this case under Idaho Code §§ 1-705.

6.    The Court has personal jurisdiction over the parties under Idaho Code § 5-514(a).

7.    Venue is proper in Ada County, State of Idaho, pursuant to Idaho Code § 5-404.

## GENERAL ALLEGATIONS

8.    Effective October 3, 2014, Pacific Crest and Andraos entered into an independent contractor agreement ("Contractor Agreement") and a book of business purchase agreement ("Purchase Agreement") with Pacific Crest.   Copies of the Contractor Agreement and Purchase Agreement (collectively "Agreements") are attached hereto and incorporated herein as Exhibits A and B, respectively.

9.    The purpose of the Agreements was commercial and was not for personal or household purposes.

10.    The Contractor Agreement, in exchange for a monthly fee, allowed Andraos and SWFNIS access and use of Pacific Crest's client management system and policy rater, that assisted Andraos and/or SWFNIS in selling insurance products and services.

COMPLAINT – Page 2

11.    The Contractor Agreement provided that although Andraos would have an equitable interest in the book of business developed by Andraos ("Andraos' Interest"), the book of business developed by Andraos ("Book of Business") would remain the property of Pacific Crest. *See* Exhibit A, Contractor Agreement, p.9, §2.4.

12.    The Contractor Agreement obligated Andraos to act in good faith and to devote all necessary time and attention to the solicitation and sale of insurance products as well as servicing the Book of Business which resulted from such sales.   *See* Exhibit A, Contractor Agreement, p.5, §1.4.

13.    The Contractor Agreement also obligated Andraos to fulfill his duties faithfully, intelligently, to the best of Andraos' ability and in the best interest of Pacific Crest.   *See* Exhibit A, Contractor Agreement, p.5, §1.4.

14.    The Contractor Agreement prohibited Andraos from disclosing Pacific Crest's confidential information as well as other information stored on Pacific Crest's client management system without Pacific Crest's prior written consent.   *See* Exhibit A, Contractor Agreement, p.6, §2.1.

15.    Andraos worked through Pacific Crest and developed the Book of Business for over two and one-half years (2 1/2) years.

16.    On January 1, 2017, the Book of Business amounted to $913,685.57 in annualized current premium.   A record showing the amount of premium in the Book of Business on January 1, 2017 is attached hereto as Exhibit C and incorporated herein.

17.    In early 2017, Andraos approached Pacific Crest about potentially purchasing the Book of Business ("Buyout") from Pacific Crest and whether, in the event that Andraos terminated the Contractor Agreement per the terms of the Contractor Agreement, Pacific Crest would allow

COMPLAINT – Page 3

Andraos to purchase the Book of Business.

18.    Pacific Crest was willing to consider the Buyout.

19.    Andraos and Pacific Crest discussed a number of closing dates all contingent on Andraos' alleged ability to obtain financing.

20.    Pacific Crest stopped charging Andraos its monthly fees based on Andraos' representations that the Buyout was imminent.

21.    Pacific Crest also consented to Andraos obtaining insurance appointments and codes outside of Pacific Crest because of Andraos' representations that the Buyout was imminent.

22.    However, Andraos kept delaying the closing of the Buyout by postponing the closing date and proposing new terms.

23.    Andraos never closed on the Buyout and never purchased the Book of Business.

24.    Upon information and belief, the purpose of the delay was to devalue the Book of Business by the transferring, renewing and/or canceling of policies and moving said policies outside of Pacific Crest (herein referred to as "Rolling the Book of Business" or "Moving the Book of Business").

25.    From January 1, 2017 to June 7, 2017, the Book of Business dropped from $913,685.57 to $712,147.71 in annualized current premium.   The amount of annualized current premium in the Book of Business on June 7, 2017 is also shown in Exhibit C.

26.    Internal Pacific Crest documents show "policy activity" wherein Mr. Andraos has transferred policies from the Book of Business to another "code" outside of Pacific Services but with the same carrier.   *See* Exhibit D, attached hereto.

27.    From January 1, 2017 to June 20, 2017, Andraos transferred twenty-one (21) policies outside of Pacific Crest--those policies constituted $54,702.60 in annualized current

COMPLAINT – Page 4

premium.

28.     From January 1, 2017 to June 20, 2017 Andraos cancelled six (6) policies outside of Pacific Crest--those policies constituted $40,937.04 in annualized current premium.

29.     From January 1, 2017 to June 20, 2017, twenty-one (21) insured individuals that had policies serviced by Andraos requested the policy be cancelled and placed with another carrier outside of Pacific Crest--those policies constituted $45,003.47 in annualized current premium.

30.     From January 1, 2017 to June 20, 2017, forty-eight (48) individuals that had their policies serviced by Andraos ("insureds") requested their policy be cancelled and placed with another carrier outside of Pacific Crest--those policies constituted $103,074.71 in annualized current premium.

31.     From January 1, 2017 to June 20, 2017, seven (7) policies serviced by Andraos expired and the renewal policy and related commissions were not received by Pacific Crest--those policies constituted $7,306.88 in premium.

32.     From January 1, 2017 to June 20, 2017, two (2) policies serviced by Andraos were not renewed by the carrier--those policies constituted $4,782.28 in annualized current premium.

33.     From January 1, 2017 to June 20, 2017, thirty-nine (39) policies serviced by Andraos were rewritten through another agency outside of Pacific Crest but with the same carrier--those policies constituted $87,230 in annualized current premium.

34.     Consequently between January 1, 2017 and June 20, 2017 Pacific Crest's policy activity documents for the Book of Business ("Andraos' Policy Activity") show that Andraos rolled the Book of Business in the amount of one-hundred forty-four (144) policies for a total of $343,037.74 in annualized current premium.   *See* Exhibit D.

35.     Upon information and belief, from at least January 1, 2017 until the present, in

COMPLAINT – Page 5

addition to Rolling the Book of Business, Andraos also wrote business outside of Pacific Crest which should have been added to the Book of Business pursuant to the Contractor Agreement.

36.     Andraos has attempted to conceal from Pacific Crest the Rolling of the Book of Business and/or new business written outside of Pacific Crest that should have been added to the Book of Business.

37.     The Contractor Agreement requires Andraos to allow Pacific Crest to audit the Book of Business, including Andraos and SWFNIS' books and records.

38.     Andraos refused or otherwise prevented Pacific Crest from being able to perform the audit despite being put on notice of Pacific Crest's desire to audit the Andraos' books and records.

39.     As a result of Andraos' Policy Activity the Book of Business has been devalued.

40.     As a result of Andraos' Policy Activity, Pacific Crest was not given the opportunity to purchase Andraos' Interest in the Book of Business as set forth in the Purchase Agreement and before it was intentionally devalued.

41.     As a result of Andraos' bad acts, Pacific Crest has been deprived of commissions on business moved out of the Book of Business as well as on business which was written outside of Pacific Crest but that should have been added to the Book of Business.

42.     Further, as a result of Andraos' bad acts, Pacific Crest's relationships with insurance carriers have been damaged and Pacific Crest's reputation in the industry has been negatively impacted.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment--Unauthorized Action)

43.     Pacific Crest incorporates by reference the preceding paragraphs as if fully alleged

COMPLAINT – Page 6

herein.

44.     An actionable, justiciable controversy exists between Pacific Crest and the Defendants, Andraos and SWFNIS, regarding the Rolling of the Book of Business without Pacific Crest's authorization or approval.

45.     Pacific Crest is the owner of the Book of Business and Andraos and SWFNIS have transferred (and/or are attempting to transfer) without Pacific Crest's authorization policies from the Book of Business.

46.     The Rolling the Book of Business is an illegal action that is in violation of the contractual obligations and fiduciary duties of the parties and needs to be declared invalid and/or reversed and precluded in the future.

47.     Andraos and SWFNIS have knowledge that that Rolling the Book of Business is unauthorized and subject to being invalidated.

48.     As a result of Andraos and/or SWFNIS' unauthorized acts, Pacific Crest has been forced to incur costs and attorney fees to protect its interests.

## SECOND CAUSE OF ACTION
### (Breach of Contractor Agreement)

49.     Pacific Crest incorporates by reference the preceding paragraphs as if fully alleged herein.

50.     Pacific Crest and Andraos entered into the Contractor Agreement and Purchase Agreement which are valid and enforceable contracts.

51.     The Contractor Agreement obligated Andraos to perform his duties faithfully and in the best interest of Pacific Crest.

52.     Andraos breached these obligations by Rolling the Book of Business and by not

COMPLAINT – Page 7

acting in the best interests of Pacific Crest.

53.     The Contractor Agreement also mandates that Pacific Crest be permitted to audit Andraos' books and records

54.     Andraos breached the Contractor Agreement by refusing to allow Pacific Crest to audit his books and records.

55.     The Contractor Agreement further prohibits Andraos from disclosing Pacific Crest's confidential information, including information contained in Pacific Crest's client management system without Pacific Crest's prior written consent.

56.     Andraos breached the Contractor Agreement when he moved and/or allowed clients to be moved by using information from Pacific Crest's client management system without obtaining Pacific Crest's prior written consent and in violation of Section 2.1 of the Contractor Agreement.

57.     As a result of Andraos' multiple breaches, Pacific Crest has been damaged in the sum of at least $10,000, which will be shown at trial.

### THIRD CAUSE OF ACTION
**(Breach of Covenant of Good Faith and Fair Dealing)**

58.     Pacific Crest incorporates by reference the preceding paragraphs as if fully alleged herein.

59.     Pacific Crest and Andraos entered into the Contractor Agreement and the Purchase Agreement, which are valid and enforceable and that obligated Andraos to perform its contractual obligations to Pacific Crest in good faith and with reasonable standards of fair dealing.

60.     The Purchase Agreement provided Pacific Crest the right to purchase Andraos' interest should the Contractor Agreement conclude.

COMPLAINT – Page 8

61.     Andraos breached the covenant of good faith and fair dealing by Rolling the Book of Business and by intentionally engaging in acts that diminished the Book of Business to the detriment of Pacific Crest and that deprived Pacific Crest of its contractual right to purchase the Book of Business without it being diminished.

62.     As a result of Andraos' multiple breaches, Pacific Crest has been damaged in the sum of at least $10,000.00, and additional amounts, which will be shown at trial.

## FOURTH CAUSE OF ACTION
### (Breach of Fiduciary Duty)

63.     Pacific Crest incorporates by reference the preceding paragraphs as if fully alleged herein.

64.     Pacific Crest and Andraos owe fiduciary duties, including duties of loyalty and care, to each other.

65.     Andraos has taken advantage of his position and control of the Book of Business to the detriment of Pacific Crest.

66.     Andraos has improperly Rolled the Book of Business to the detriment of Pacific Crest and has otherwise failed to act in Pacific Crest's best interest.

67.     Andraos has engaged in grossly negligent conduct or intentional misconduct in maintaining and servicing the Book of Business, including but not limited to improper attempts to transfer, cancel, or renew policies that comprise the Book of Business in a way that is detrimental to Pacific Crest.

68.     As a result of Andraos' breach of fiduciary duties Pacific Crest has been damaged in amounts to be proven at trial, and forced to incur costs and attorney fees to protect its interests.

COMPLAINT – Page 9

## FIFTH CAUSE OF ACTION
### (Conversion)

69.     Pacific Crest incorporates by reference the preceding paragraphs as if fully alleged herein.

70.     Andraos and/or SWFNIS took and kept a portion of the Book of Business owned by Pacific Crest without a right to do so.

71.     As a result of Andraos and/or SWFNIS' conversion of a part of the Book of Business, Pacific Crest suffered damages of at least $10,000.00 which will be shown at trial.

## SIXTH CAUSE OF ACTION
### (Unjust Enrichment)

72.     Pacific Crest incorporates by reference the preceding paragraphs as if fully alleged herein.

73.     Andraos and/or SWFNIS has benefited from Pacific Crest's Book of Business by Rolling the Book of Business in a way that benefitted Andraos and/or SWFNIS.

74.     Andraos and/or SWFNIS accepted the benefit that came from the Rolling of the Book of Business.

75.     Under the circumstances, it would be unjust for Andraos and/or SWFNIS to retain the benefit of rolling the Book of Business without compensating Pacific Crest for that value.

## SEVENTH CAUSE OF ACTION
### (Tortious Interference with Business Expectancy)

76.     Pacific Crest incorporates by reference the preceding paragraphs as if fully alleged herein.

77.     Pacific Crest had a valid business expectancy and financial interest in the Book of Business.

COMPLAINT – Page 10

78.    Andraos and SWFNIS understood and appreciated that business expectancy and financial interest.

79.    Notwithstanding this understanding, Andraos and SWFNIS took improper and unauthorized action to purposefully interfere with Pacific Crest's business expectancy and interest.

80.    As a result of Andraos and SWFNIS' improper interference with Pacific Crest's business expectancy and interest, Pacific Crest suffered damages of at least $10,000.00 which will be shown at trial.

## EIGTH CAUSE OF ACTION
### (Fraud)

81.    Pacific Crest incorporates by reference the preceding paragraphs as if fully alleged herein.

82.    When Andraos approached Pacific Crest about potentially purchasing the Book of Business, Andraos made a number of representations to Pacific Crest.

83.    After Pacific Crest indicated a willingness to consider the transaction, Andraos and Pacific Crest discussed a number of closing dates all contingent on Andraos' alleged ability to obtain financing.

84.    Pacific Crest stopped charging Andraos its monthly fees based on Andraos' representations that the Andraos would purchase the Book of Business in a timely manner.

85.    Pacific Crest also consented to Andraos obtaining insurance appointments and codes outside of Pacific Crest because of Andraos' representations that the purchase was imminent.

86.    Andraos' representations regarding his ability to obtain financing, that financing was imminent, and that Andraos desired to close on the transaction timely were false and made for

COMPLAINT – Page 11

the purpose of delaying the Buyout so that Andraos and SWFNIS could roll the Book of Business.

87.     Andraos' statements were material and were relied on by Pacific Crest as evidenced by Pacific Crest not charging Andraos its monthly fees and consenting to Andraos obtaining insurance appointments and codes outside of Pacific Crest.

88.     Andraos either knew the representations were false or was unaware of whether his representations were true at the time he made the statements.

89.     Pacific Crest did not know, and was unable to confirm, the representations were false.

90.     Andraos intended for Pacific Crest to rely upon the statements and act upon them in a manner reasonably contemplated.

91.     Pacific Crest's reliance was reasonable under all the circumstance.

92.     As a result of Pacific Crest's reliance on the false representations, Pacific Crest suffered damages of at least $10,000.00 proximately cause by reliance on the false representations which will be shown at trial.

### NINTH CAUSE OF ACTION
**(Application for Appointment of Receiver)**

93.     Pacific Crest incorporates by reference the preceding paragraphs as if fully alleged herein.

94.     Pacific Crest owns the Book of Business.

95.     Andraos has been Rolling the Book of Business and/or neglecting to service the Book of Business in a way to protect and/or preserve and/or grow the assets of the Book of Business.

96.     Andraos and/or SWFNIS have refused to allow Pacific Crest to audit books and

COMPLAINT – Page 12

records as required by the Contractor Agreement.

97.     As a result of Andraos and/or SWFNIS' acts and omissions the Book of Business

has lost and will continue to lose significant value to the point of being rendered valueless.

98.     The appointment of a receiver is necessary to, *inter alia*, to audit the Book of

Business and to protect all remaining assets of the Book of Business.

99.     The appointment of a receiver is further necessary to reestablish relationships with

clients and carriers, and to manage commissions and accounts and to ensure the ongoing

profitability of the Book of Business.

## CLAIM FOR ATTORNEY FEES

Pacific Crest has been required to retain the services of counsel, individually and on behalf

of the Companies.   Pacific Crest is entitled to recover reasonable costs and attorney fees from

Defendants pursuant to Idaho Rule of Civil Procedure 54, Idaho Code §§ 12-120(3) and 12-121,

and as may otherwise be allowed by law.

## DEMAND FOR JURY

Pacific Crest demands a trial by jury comprised of the maximum number of jurors allowed

by law.

## PRAYER FOR RELIEF

WHEREFORE, Pacific Crest prays for a declaration and entry of judgment as follows:

1.     That any transfer of a policy to codes outside of Pacific Crest be voided and/or

declared invalid.

2.     An Order declaring that Pacific Crest must be repaid for any monies and/or

commissions improperly diverted to Andraos and/or SWFNIS and an award of prejudgment

interest at the statutory rate on any declared amounts improperly diverted from the Book of

COMPLAINT – Page 13

Business.

3.      An Order appointing a receiver to take control of and operate the Book of Business under judicial supervision until the disputes between the parties can be resolved.

4.      An Order awarding special and general damages according to proof, and interest in an amount to be proven at the time of trial.

5.      An award of attorney fees and costs for having to bring this action.

6.      Any further relief as this Court may deem just, equitable and appropriate.

DATED this 22nd day of June, 2017.

STEWART TAYLOR & MORRIS PLLC


/s/ Daniel W. Bower
Daniel W. Bower
Richard S. Bower
*Attorneys for Defendant Pacific Crest Services, Inc.*

COMPLAINT – Page 14

## VERIFICATION

STATE OF IDAHO       )
                     )   ss.
County of Ada         )

     Shawn Webb, being first duly sworn upon oath, deposes and says:

     I, Shawn Webb, President of Pacific Crest Services, Inc., being first duly sworn upon oath,

hereby depose and say that I have read the foregoing Complaint and Demand for Jury Trial, and

that the matters alleged in said Complaint are true and correct.


                               _____
                               Shawn Webb


SUBSCRIBED AND SWORN TO before me this 22nd day of June, 2017.

                               Tracy A. Kyle  Ada Cty ID
                               NOTARY PUBLIC for IDAHO
                               My Commission Expires 6-26-18

COMPLAINT – Page 15

DocuSign Envelope ID: 9E7008F6-09ED-4BE1-9996-1FADC02247CF

# INDEPENDENT CONTRACTOR AGREEMENT

THIS INDEPENDENT CONTRACTOR AGREEMENT is executed on this 3rd___ day of_____

_____October_____, _____2014_____, by and between Pacific Crest Services, Inc. (hereinafter "Company"), and _____John Andraos_____ (hereinafter "Contractor").

In addition to this Independent Contractor Agreement, Company and Contractor may enter into related agreements, including but not limited to a Compensation Agreement, Book of Business Purchase Agreement,  Mutual Non-disclosure Agreement, Pre-Existing Contractual Relationships Agreement, Walkaway Addendum, Security Agreement and/or other agreements, all or any of which shall be taken together to define the relationship between Company and Contractor and all of which shall hereafter be collectively referred to as the "Agreement." This Agreement shall be effective as of the date set forth hereinabove.

NOW, THEREFORE, FOR AND IN CONSIDERATION of the mutual promises and agreements contained herein, and for other valuable consideration, the sufficiency of which is hereby acknowledged, Company and Contractor agree to affiliate for the purpose of marketing insurance products under the following terms and conditions:

## SECTION 1 - WORK TO BE PERFORMED

**1.1 Term.**    Company agrees to contract with Contractor, for a term commencing on the date set forth hereinabove (the "Effective Date") and continuing until terminated in accordance with Section 4 of this Agreement.

During the term of this agreement, the Company shall provide the following services to the Contractor:

INDEPENDENT CONTRACTOR AGREEMENT
(AUGUST 28, 2014)                                      1



DocuSign Envelope ID: 9E7008F6-09ED-4BE1-9996-1FADC02247CF

a.   Contractor shall be provided an account on the Company's Client Management System, and Contractor shall have use of the system;

b. Company shall provide back office policy management and commission reporting;

c.   Company shall make best efforts to obtain appointments for Contractor with its Carriers;

d. Company shall provide training on its internal compliance procedures and technology platform.  Company will make available additional training on Carrier requirements; Sales techniques; and documentation procedures at Company headquarters at an additional cost.

e.   Company services shall be provided according to the Company fee schedule in place as of the Effective Date. The fees may be increased from time to time as costs of these services increase to Company.

f. Contractor is responsible for complying with Carriers' policies and the maintenance of its appointments with Carriers.

g. Contractor's failure to pay fees and assessments may result in suspension of services provided by Company, and should Contractor show a pattern of failure to pay Company at its discretion may invoke the Termination provisions of Section 4 of this Agreement.

**1.2**    **Out of Network Business**

Contractor may write out of Network business only after ascertaining that the carrier they are placing business with is not in the Company's carrier network.  Prior to placing out of network business Contractor must execute the Company's "Out of Network Business" agreement.

DocuSign Envelope ID: 9E7008F6-09ED-4BE1-9996-1FADC02247CF

Contractor is permitted to write business with Carriers for which Company does not have an appointment (Out of Network business).  Contractor must provide their own E&O coverage for this business. Contractor shall remain solely responsible for servicing this out of network business, including but not limited to billing, commissions, etc. Contractor shall hold harmless and indemnify Company for any claims arising out of Contractors Out of Network business.

## 1.3  Errors and Omissions Coverage

a. Contractor shall be required to carry a policy of Errors & Omissions (E&O) Coverage in the amount of One Million Dollars ($1,000,000.00), for each occurrence and a maximum deductible of Five Thousand Dollars ($5000.00); the amount of required coverage shall be reviewed from time to time to take account of additional E&O exposure, and Company may require Contractor to adjust coverage appropriately. Contractor will provide Company with a Certificate of Coverage on the yearly anniversary of this Agreement showing uninterrupted coverage.  Contractor shall be responsible for all deductibles and expenses resulting from any E&O claim and agrees to indemnify and hold Company harmless from any such claims.  Contractor is required to carry their own E&O policy if they are writing Out of Network business (Business that is written with Carriers for which Company does not hold an appointment).  Contractor is required to carry their own E&O policy if they have contracted with Sub-Contractors and this E&O policy must include coverage for acts and omissions of the Sub-Contractor in the same amounts as set forth above.

b. If possible the E&O policy shall name Company as an additional insured; and Contractor shall provide Company with proof of coverage prior to appointment.

DocuSign Envelope ID: 9E7008F6-09ED-4BE1-9996-1FADC02247CF

c. Contractor shall have three options for meeting the E&O coverage requirement. The three options follow and the contractor shall select and initial the option they choose.

*OPTION I*

☐                     Company shall add Contractor to its E&O plan.  (If a Contractor has had past claims experience, this option is not available.  If Contractor is writing out of network business this option is not available.  If Contractor has contracted with sub-contractors this option is not available.)  This option is available to Contractor for a maximum of 1-year from the date of this agreement.  After 12-months on this option the Company has the option to remove the Contractor from its E&O plan.  The Contractor shall pay $150.00 per month for the first year if this option is selected.

*OPTION II*

☐                     Contractor may elect to work with our E&O agent to select an E&O plan that meets their needs and the Company's requirements.  When selecting this option the Contractor must include coverage in the new policy to cover prior acts while under the Company's E&O plan.  If a Contractor did not initially elect coverage under the Company's E&O plan they will still need to include coverage in the new policy to cover prior acts while under contract with the Company.

*OPTION III*

☐                     Contractor may elect to obtain coverage through an agency and carrier that has not been preapproved by Company.  Contractor will submit the potential coverage to our agent for review and approval.  If the coverage is not approved by

DocuSign Envelope ID: 9E7008F6-09ED-4BE1-9996-1FADC02247CF

Company's agent the Contractor will not be permitted to use this coverage to meet the E&O requirement of this section.

I elect to use Option ¹_____ for obtaining E&O insurance to meet my obligations under this Agreement.

Signed: _____

d. Contractor shall immediately notify Company if at any time their E&O coverage lapses, is canceled, or there is an interruption in coverage for any reason. While E&O coverage is interrupted Contractor shall not have access to Company's Carrier; Client Management System and Contractor shall not be permitted to bind coverage until E&O coverage with a retroactive date to the date of lapse is once more in place.

**1.4 Duties.** Contractor agrees to perform work in furtherance of its independent business and in consideration of the services of the Company on the terms and conditions set forth in this Agreement, and agrees to devote all necessary time and attention (reasonable periods of illness excepted) to the performance of the duties specified in this Agreement. Contractor's duties shall be as follows: Solicitation and sale of insurance products to the general public, and servicing the clients that result from these sales. Contractor further agrees that in all such aspects of such work, Contractor shall comply with the policies, standards, regulations of the Company and its Carriers from time to time established, and shall perform the duties assigned faithfully, intelligently, to the best of his/her/their ability, and in the best interest of the Company.

**1.5 Fees.** Contractor agrees to pay Company an initial setup fee of Five Hundred Dollars ($500.00), due at the inception of this contract, for the above services and a continuing monthly payment of Four Hundred Dollars ($400.00) due and payable on the first day of each month during the term of this contract. For Contractors executing this Agreement at any time other than

DocuSign Envelope ID: 9E7008F6-09ED-4BE1-9996-1FADC02247CF

the 1st of the month; the fee shall be pro-rated according to the number of days remaining in the month.

## SECTION 2 - CONFIDENTIALITY

**2.1** **Confidentiality.** Contractor acknowledges and agrees that all financial and accounting records, lists of property owned by Company, including amounts paid therefore, client and customer lists, electronically recorded and stored software and information, trade secrets, intellectual properties, business strategies, sales systems, and other Company data and information related to its business (hereinafter collectively referred to as "Confidential Information") are valuable assets of the Company. Except for disclosures required to be made to advance the business of the Company and information which is a matter of public record, Contractor shall not, during the term of this Agreement or after the termination of this Agreement, disclose any Confidential Information to any person or use any Confidential Information for the benefit of Contractor or any other person, except with the prior written consent of the Company. Contractor shall protect Company's Confidential Information using at least the same degree of care that Contractor uses to protect Contractor's own confidential information of similar importance, but no less than a reasonable degree of care. Contractor agrees to use Company's Confidential Information solely for the purpose of exercising Contractor's rights and performing Contractor's obligations under this Agreement and agrees not to use Company's Confidential Information for any other purpose, for Contractor's own or any third party's benefit, without Company's prior written consent. Contractor agrees further not to disclose or disseminate Company's Confidential Information to anyone other than: (i) those of Contractor's employees and contractors, or

INDEPENDENT CONTRACTOR AGREEMENT
(AUGUST 28, 2014)                    6

DocuSign Envelope ID: 9E7008F6-09ED-4BE1-9996-1FADC02247CF

those who have a need to know and who are bound by a written agreement that prohibits unauthorized use or disclosure of the Company's Confidential Information; or (ii) except as otherwise agreed or permitted in writing by Company.   Contractor may disclose Company's Confidential Information to the extent required by law, provided that Contractor takes reasonable steps to notify Company of such requirement before disclosing the Company's Confidential Information and to obtain protective treatment of the disclosure of Company's Confidential Information.   Contractor acknowledges that damages to the Company for improper disclosure of Company's Confidential Information may be irreparable; and therefore, Company is entitled to seek equitable relief, including injunction and preliminary injunction in addition to all other remedies available to Company at law or equity.  Company may pursue any remedy to protect its Confidential Information without waiving other remedies available to it for breach of this covenant.

**2.2**     **Return of Documents.**  Contractor acknowledges and agrees that all originals and copies of records, reports, documents, lists, plans, memoranda, notes and other documentation, as well as electronically recorded and processed data related to the business of the Company or containing any Confidential Information shall be the sole and exclusive property of the Company, and shall be returned to the Company upon the termination of this Agreement or upon the written request of the Company.

**2.3**     **Non-Competition/Non-Solicitation:** In consideration of the various covenants and obligations of Company in this Agreement, during the term of this Agreement Contractor shall not (either directly or indirectly as an employee, partner, officer, consultant, shareholder or otherwise of any corporation, governmental body, individual, partnership, limited liability company, trust or other entity) own, manage, control,

DocuSign Envelope ID: 9E7008F6-09ED-4BE1-9996-1FADC02247CF

participate in or in any manner engage in any business that is the same as, substantially similar to or otherwise competitive with the business Contractor conducts with Company during the term of this Agreement.  This Non-Competition/Non-Solicitation clause shall not apply to out of network business (Business written with Carriers for which Company does not have an appointment) disclosed in the Out of Network Disclosure (Addendum A) attached hereto and incorporated herein by reference. Contractor understands and agrees that, in view of Company's substantial investment in its business and the consideration received by Contractor pursuant to this Agreement, the foregoing limitation is reasonable and necessary.   Nothing herein shall prohibit Contractor from being a passive owner of not more than 5% of the outstanding stock of any class of corporation that is publicly traded, so long as Contractor has no active participation in the business of such corporation.

Contractor agrees further that upon termination of the Agreement for any reason, and for two years thereafter Contractor will not engage in any of the following activities:

(a) Solicit or in any manner encourage, either directly or indirectly, any employee, contractor or consultant of Company to leave Company for any reason; nor will he/she interfere in any other manner with the contractual or business relationships at the time existing between Company and its current employees, contractors, or consultants; or

(b) Following the termination of Contractor's affiliation with Company, hire, directly or through another entity, any person who was an employee of Company at any time; or

(c) Induce or attempt to induce, either directly or indirectly, any client of Company to cease doing business with Company or in any way interfere with the existing business relationship between any client and Company; or

DocuSign Envelope ID: 9E7008F6-09ED-4BE1-9996-1FADC02247CF

(d) Induce or attempt to induce, either directly or indirectly, any carrier, insurer, supplier, distributor, licensee or other business affiliate of Company to cease doing business with Company or in any way interfere with the existing business relationship between carrier, insurer, supplier, distributor, licensee or other business affiliate and Company.

**2.4    Book of Business:**    Contractor's list of accounts and/or clients as entered into the Company's CMS system and the commissions and renewals to be received therefrom shall be known as the Contractor's "Book of Business". Contractor shall have an equitable interest in his/her Book of Business. The Book of Business in its entirety shall remain the property of the Company. Out of Network business as set forth in the "Out of Network" addendum, attached hereto and incorporated herein by reference, and the commissions and renewals therefrom shall remain the sole property of the Contractor. Upon terminating Contractor's association with the Company, the Company or its successors and/or assigns will have the right to purchase the Contractor's equitable interest in the Book of Business under the terms set forth in the Book of Business Purchase Agreement attached hereto and incorporated herein by reference. Contractor shall have the option to purchase the Company's interest in the Book of Business under the terms set forth in the Book of Business Purchase Agreement.

**2.5    Sub-Contractors:**    Contractor shall retain the right to contract with Sub-contractors during Contractor's relationship with Company. Contractor must have their own E&O coverage, in the amounts set forth in Section 1.2 of this Agreement, for the Sub-Contractor. Prior to entering into a Service Agreement with Company the Sub-Contractors must provide Company with proof of their contract with Contractor.

DocuSign Envelope ID: 9E7008F6-09ED-4BE1-9996-1FADC02247CF

Sub-Contractors must sign a service agreement with Company prior to being granted access to Company's Client Management System and Agent Desktop.  Such service agreement will be in addition to any contract Sub-Contractor executes with Contractor. Prior to being granted access to Company services and systems Sub-Contractor must also provide proof of Errors and Omissions coverage in the same amounts as required by Contractors in Section 1.2. (a) of this Agreement.

Contractor shall be responsible for accounting and paying commissions and renewals earned by Sub-Contractor.

Contractor agrees to indemnify and hold harmless Company for any acts or omissions of Sub-Contractor.

**2.6     Audit of Records:**    Since Contractor is an independent agent, retaining Contractor's own books and records, Company at all times retains the right to audit the books and records of Contractor to insure compliance with this agreement. Any such audit shall only be conducted at a reasonable time and place and only after reasonable notice to the Contractor.

**2.7     Injunction:**    Contractor agrees that it would be difficult to measure damage to the Company from any breach by Contractor of Sections 2.1, 2.2, or 2.3 and that monetary damages would be an inadequate remedy for such breach. Accordingly, Contractor agrees that if Company makes a claim that Contractor has breached Section 2.1, 2.2, or 2.3 the Company shall be entitled to, in addition to all other remedies it may have at law or equity, to an injunction or other appropriate orders to restrain any such breach, without showing or proving actual damages sustained by the Company.

DocuSign Envelope ID: 9E7008F6-09ED-4BE1-9996-1FADC02247CF

**2.8    No Release:** Contractor agrees that the termination of this Agreement shall not release Contractor from any obligations under Section 2 of the Agreement.

# SECTION 3 - COMPENSATION

**3.1    Compensation:**        In consideration of all services to be rendered by Contractor to the Company, the Company shall pay the Contractor pursuant to the   Compensation Agreement attached hereto and incorporated herein by reference.

**3.2    Withholding; Other Benefits:** Compensation paid pursuant to this Agreement shall not be subject to the customary withholding of income taxes and other employment taxes. Contractor shall be solely responsible for reporting and paying any such taxes.  The Company shall not provide Contractor with any coverage or participation in the Company's accident and health insurance, life insurance, disability income insurance, medical expense reimbursement, wage continuation plans, or other fringe benefits provided to employees.

# SECTION 4 - TERMINATION

**4.1    Termination at Will:** This Agreement may be terminated or suspended by the Company immediately, at will, and in the sole discretion of the President of the Company. Contractor may terminate this Agreement upon fourteen (14) days written notice to the Company. This Agreement also may be terminated at any time upon the mutual written agreement of the Company and Contractor.

Upon Contractor producing a Book of Business with a rolling annual average property & casualty premium of Three Hundred Thousand Dollars ($300,000.00) or more, Company may only terminate this Agreement with Contractor for cause.

**4.2    Termination for Cause:** For purposes of this Agreement "Cause" shall mean

DocuSign Envelope ID: 9E7008F6-09ED-4BE1-9996-1FADC02247CF

any of the following:

a.   Death of the Contractor;

b. The inability of Contractor to perform Contractor's usual obligations hereunder for a continuous period exceeding 180 days;

c. Any act or omission that constitutes a material breach by Contractor of his obligations or covenants under this Agreement;

d.   Contractor's conviction of a felony or of any crime involving moral turpitude, fraud or misrepresentation or the perpetuation by Contractor of any dishonest act, any of which damage or violate the best interest of Company or any affiliate or subsidiary thereof;

e.   Use of any substances which interferes with the performance of Contractors' duties and responsibilities under this Agreement;

f.  Any other act or omission by Contractor which, in the good faith opinion of the President of the Company, is injurious in any material respect to the financial condition or business reputation of Company or any of its affiliates or subsidiaries and which results from Contractor's gross negligence or willful misconduct;

g. Incompetence or dereliction on the part of Contractor in the performance of Contractor's duties and responsibilities under this Agreement, provided Company shall have given Contractor at least thirty (30) days prior written notice of such incompetence or dereliction and Contractor shall have failed to cure such incompetence within such thirty (30) day period;

h. Failure of the Contractor to maintain a current, and in good standing, insurance producer license(s) for the state(s) in which Contractor is soliciting sales;

DocuSign Envelope ID: 9E7008F6-09ED-4BE1-9996-1FADC02247CF

i. Any act of the Contractor to roll over the Book of Business to an entity other than Pacific Crest Services, Inc. during the term of this Agreement, including but not limited to moving business from Company's network of Carriers to Carriers outside of this Agreement;

j. Breach of a "non-compete" and/or "confidentiality" agreement executed with a prior employer;

k. Failure of Contractor to timely reimburse Company for any chargebacks received by the Company on Commissions previously paid to Contractor; or

l. Failure of Contractor to maintain appointments with Carriers of the Company other than by voluntary termination by Contractor with the consent of the Company.

m. Lapse in E&O coverage where Contractor has not notified Company of lapse.

4.3    **Commission Chargebacks:**  Contractor shall be responsible for immediately reimbursing Company for any chargebacks received by the Company on Commissions previously paid to the Contractor. This obligation shall survive termination of this Agreement.

4.4    **Death:**  In the event Contractor dies during the term of this Agreement, this Agreement shall terminate, and the Company shall pay to Contractor's estate the compensation which would otherwise be payable to Contractor, including the purchase of Contractor's Book of Business under the terms and conditions as set forth in the Book of Business Purchase Agreement.  In the alternative, should the Contractor's heirs and/or assigns desire to continue the affiliation with Pacific Crest Services, Inc., Company shall negotiate in good faith with the heirs and/or assigns the continuation of the affiliation

DocuSign Envelope ID: 9E7008F6-09ED-4BE1-9996-1FADC02247CF

under the same terms and conditions of agreements that existed between Company and Contractor at the time of the Contractor's death.

4.5    **Termination Fee.** In consideration of the substantial time and resources Company provides Contractor, Contractor agrees to pay Company Six Thousand Two Hundred Fifty Dollars ($6,250.00) upon termination of this Agreement. If Contractor has attended Company's on site Contractor training the Termination Fee shall be Four Thousand Dollars ($4,000.00)

(a) In the event that Company terminates this Agreement without Cause this Termination Fee shall be waived.

(b) Company shall waive and reduce the Termination Fee on the annual anniversary of this Contract by One Fourth (1/4) of the total fee through the fourth anniversary date.

(c) Upon passing the fourth anniversary of this contract Contractor will be exempted from any Termination Fee.

(d) Contractor shall execute the Security Agreement, attached hereto as Exhibit B, and incorporated herein by reference to secure payment of this termination fee. The Security Agreement provides for a UCC filing on Contractor's equitable interest in the Book of Business set forth in Section 2.4 of this Agreement.

## SECTION 5 - INDEPENDENT CONTRACTOR STATUS

Contractor acknowledges that he/she is an independent contractor and is not an agent, partner, joint venture, nor employee of Company. Contractor shall have no authority to bind or otherwise obligate Company in any manner nor shall Contractor represent to anyone that it has a right to do so. Contractor further agrees that in the event that the Company suffers any loss or

DocuSign Envelope ID: 9E7008F6-09ED-4BE1-9996-1FADC02247CF

damage as a result of a violation of this provision Contractor shall indemnify and hold harmless the Company from any such loss or damage.

### SECTION 6 - REPRESENTATIONS OF WARRANTIES OF CONTRACTOR

Contractor represents and warrants to the Company that Contractor may enter into this Agreement and that there are no employment contracts, non-compete, or other contractual obligations to which Contractor is subject, which prevents Contractor from entering into this Agreement or from performing fully Contractor's duties under this Agreement. Contractor agrees to indemnify and hold Company harmless for any loss related to a breach of this covenant.

# SECTION 7 - INDEMNIFICATION

7.1     Contractor agrees to indemnify, keep indemnified, and save harmless Company, and/or the Carriers with which it is appointed, from and against any and all demands, liabilities, costs, penalties, obligations, interest, damages and expenses of whatever nature or kind, including fees of attorneys (including both outside and in-house attorneys' fees) and all other expenses, including but not limited to costs and fees incurred in investigation of 3rd party claims or potential 3rd party claims, adjustment of 3rd party claims, procuring or attempting to procure the discharge of such 3rd party claims, or attempting to recover losses or expenses from the undersigned or third parties, whether Company, and/or the Carriers with which it is appointed, shall have paid out any such sums or any part thereof or not; and

7.2     Contractor and Company agree that in furtherance of such indemnity:

7.2.1 In any claim or suit hereunder and in any and all matters arising between the Contractor and Company, and/or the Carriers with which it is appointed, involving 3rd party claims, an itemized statement of the aforesaid loss and expense, sworn to by a

DocuSign Envelope ID: 9E7008F6-09ED-4BE1-9996-1FADC02247CF

representative of Company, and/or the Carriers with which it is appointed, or the vouchers or other evidence of disbursement by Company, and/or the Carriers with which it is appointed, shall be prima facie evidence of the fact and extent of the liability hereunder of the undersigned.

7.2.2 Company, and/or the Carriers with which it is appointed, shall have the right to reimbursement of its expenses, interest, and attorneys' fees arising from 3rd party claims, hereunder, irrespective of whether any loss payment has been made by Company, and/or the Carriers with which it is appointed.

7.2.3 In any suit between any of the undersigned and Company under this indemnification agreement, the prevailing party may recover reasonable expenses and attorneys' fees incurred in such suit or in collecting any judgment obtained.

7.2.4  The foregoing notwithstanding, neither party shall be required to indemnify the other (a) in criminal proceedings, or (b) civil proceedings where either of these parties is the plaintiff against the other.  The foregoing rights are in addition to any other rights to which either party hereto may be entitled under any other agreement, policy, bylaw, insurance policy, ordinance, statute or other provision.

7.2.5 This Indemnification shall survive termination of this Agreement.

## SECTION 8 – LICENSE

8.1     Under the relationship pursuant to this Agreement, Contractor has a non-exclusive limited license to utilize the Company's branding, including trade name, logo, copyrighted materials, etc. (collectively, its "Trade name") in all dealings between Contractor, Contractor's sub-contractor(s), and any third parties.  Contractor must identify its affiliation with Company in all communications with the Public.

DocuSign Envelope ID: 9E7008F6-09ED-4BE1-9996-1FADC02247CF

8.2    Contractor has no ownership interest in Company's Trade name, and shall not utilize it other than in its own business and that of its present and any future sub-contractors, and shall not grant any rights or privileges to use the same to any other third parties outside of this Agreement.

8.3    In the event the parties to this Agreement terminate this Agreement for any reason, Contractor's right to utilize Company's Trade name shall cease.

    8.3.1    Provided however, that in order to facilitate a smooth transition and minimize customer confusion, re-do marketing materials and advertising, etc., Contractor shall be entitled within its sole discretion to continue utilizing the Trade name in the same fashion it does under this Agreement for a period not to exceed one (1) year following the effective date of termination of this Agreement with the Company; and

    8.3.2    Contractor shall remain obligated to pay the monthly service fee; and Commission split to Company for as long as it elects to continue use of the Trade name during the one (1) year period.

8.4    Contractor shall use the Trade name, only in accordance with the specifications set forth in Appendix "A" to this Agreement.

## SECTION 9 - MISCELLANEOUS PROVISIONS

9.1    The provisions of this Agreement shall be binding upon and inure to the benefit of the Heirs, personal representatives, successors and assigns of the parties. Any provision hereof which imposes upon Contractor or Company an obligation after termination or expiration of this Agreement shall survive termination or expiration hereof and be binding upon Contractor or Company.

DocuSign Envelope ID: 9E7008F6-09ED-4BE1-9996-1FADC02247CF

9.2   In the event of a default under this Agreement, the defaulted party shall reimburse the non- defaulting party or parties for all costs and expenses reasonably incurred by the non- defaulting party or parties in connection with the default, including without limitation, reasonable attorney's fees and costs.  Additionally, in the event a suit or action is filed to enforce this Agreement or with respect to this Agreement, the prevailing party or parties shall be reimbursed by the other party for all costs and expenses incurred in connection with the suit or action, including without limitation, reasonable attorney's fees at the trial level and on appeal.  This covenant shall survive termination of this Agreement.

9.3   In the event that a dispute shall arise between Company and Contractor concerning any provision of this Agreement, or the Book of Business Purchase Agreement or the Compensation Agreement the parties shall attempt to resolve such dispute through good faith negotiation.  If Company and Contractor are unable to resolve such dispute through good faith negotiation within 60-days after either party has provided written notice of a dispute to the other party, the dispute will be settled by binding arbitration conducted before a single arbitrator.  Either Company or Contractor may submit the dispute to arbitration. The arbitration will be conducted in accordance with the then applicable Commercial Arbitration Rules, but not under the auspices, of the American Arbitration Association (AAA), and will be held in the City of Boise, Ada County, in the State of Idaho.  The arbitrator shall be mutually agreed upon by Company and Contractor, but if they are unable to agree on an arbitrator the arbitrator shall be appointed pursuant to Idaho's Uniform Arbitration Act, and more specifically, Idaho Code § 7-903.  All arbitration proceedings shall be closed to the public and confidential.  All records relating

DocuSign Envelope ID: 9E7008F6-09ED-4BE1-9996-1FADC02247CF

thereto shall be permanently sealed, except as necessary to obtain court confirmation of the arbitrator's decision.  The arbitrator will be bound by the terms and conditions of this Agreement and shall have no power, in rendering his or her award, to alter or depart from any express provision of this Agreement, and his or her failure to observe this limitation shall constitute grounds for vacating the award. The award of the arbitrator shall be final and binding upon the parties, and judgment upon the award may be entered in any court having jurisdiction thereof.

9.4    No waiver of any provision of this Agreement shall be deemed, or shall constitute, a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.  No waiver shall be binding unless executed in writing by the party making the waiver.

9.5    This Agreement shall be governed by and shall be construed in accordance with the laws of the State of Idaho as if performed entirely therein, and without reference to its conflicts of laws rules. This Agreement contains a binding arbitration provision. Should any dispute arise as to the enforceability of the binding arbitration provision, the state and federal courts located in Boise, Ada County, Idaho have exclusive jurisdiction to adjudicate any dispute in connection therewith, and each party consents to the exercise of personal jurisdiction by the state and federal courts located in Boise, Ada County, Idaho. If the binding arbitration provision is found to be unenforceable by a state or federal court located in Ada County, Idaho, the state and federal courts located in Boise, Ada County, Idaho have exclusive jurisdiction to adjudicate any dispute in connection with this Agreement and each party consents to the exercise of personal jurisdiction by the state and federal courts located in Boise, Ada County, Idaho.

DocuSign Envelope ID: 9E7008F6-09ED-4BE1-9996-1FADC02247CF

9.6     This Agreement constitutes the entire agreement between the parties pertaining to its

        subject matter and it supersedes all prior contemporaneous agreements, representations

        and understandings of the parties.   No supplement, modification or amendment of this

        Agreement shall be binding unless executed in writing by all parties.

9.7     This Agreement must be interpreted in accordance with the plain meaning of its terms

        and not strictly for or against either party (shall not be construed against the drafting

        party).


WITNESS OUR SIGNATURES, this the 3rd day of October, 20 14

COMPANY: Pacific Crest Services, Inc.

By: _____

Shawn G. Webb, President

CONTRACTOR:


By: _____

DocuSign Envelope ID: 9E7008F6-09ED-4BE1-9996-1FADC02247CF

# BOOK OF BUSINESS PURCHASE AGREEMENT

**THIS BOOK OF BUSINESS PURCHASE AGREEMENT** is entered into contemporaneously with that certain Independent Contractor Agreement executed on the ___3rd___ day of ___October___, 20 _14_ between Company and Contractor.  This Agreement incorporates the covenants and warranties and other defined terms from the Independent Contractor Agreement.

Whereas the Company affirms that Contractor shall have an equitable interest in his/her Book of Business as set forth in Section 2.4 of the Independent Contractor Agreement. Company shall have the right of first refusal to purchase Contractor's equitable interest in his/her Book of Business at the time Contractor's affiliation with Company is terminated for any reason. Company may purchase the Contractor's equitable interest in the Book of Business under the following terms:

## Section 1
### Right to Purchase

**1. 1**  Within 60-days of Contractor terminating his/her association with the Company, the Company may purchase and Contractor may agree to sell his/her equitable interest in the Contractor's Book of Business under the following terms:

   1.1.1   If Contractor terminates the Agreement prior to the 1-year anniversary, Contractor shall receive no payment for his/ her equitable interest.

   1.1.2   If Contractor has been under contract with the Company for more than 1-year and less than 2-years, Company will pay Contractor 50% of the monthly commissions and renewals earned on the Book of Business, less any expenses including but not limited to chargebacks, cancellations, etc., in the year



DocuSign Envelope ID: 9E7008F6-09ED-4BE1-9996-1FADC02247CF

following termination of this agreement.

1.1.3   If Contractor has been under contract with the Company for more than 2-years and less than 3-years, Company will pay Contractor 50% of the monthly commissions and renewals earned on the Book of Business, less any expenses including but not limited to chargebacks, cancellations, etc., in the 2 years following termination of this agreement

1.1.4   If Contractor has been under contract with the Company for more than 3-years and less than 4-years, Company will pay Contractor 50% of the monthly commissions and renewals earned on the Book of Business, less any expenses including but not limited to chargebacks, cancellations, etc., in the 3 years following termination of this agreement.

1.1.5   If Contractor has been under contract with the Company for more than 4-years and less than 5-years, Company will pay Contractor 50% of the monthly commissions and renewals earned on the Book of Business, less any expenses including but not limited to chargebacks, cancellations, etc., in the 4 years following termination of this agreement.

1.2   Company shall notify Contractor in writing within 60-days of the termination of Association of its intent to purchase/or not to purchase Contractor's Book of Business. Should Company fail to notify Contractor of the intent to purchase Contractor's interest in the Book of Business, Contractor shall be free to sell his/her interest in the

DocuSign Envelope ID: 9E7008F6-09ED-4BE1-9996-1FADC02247CF

Book of Business to a purchaser of his/her choosing, at a price agreed upon by Company and Contractor.  Such agreement on price shall be executed in writing by Company and Contractor.

1.3   In the event that the Company does not exercise its option to purchase the Contractor's interest in the Book of Business and the Contractor elects to purchase or transfer ownership of the Book of Business, Contractor may purchase Company's interest in the Book of Business under the following terms and conditions:

> (a) Contractor may purchase the Book of Business with one lump sum payment under the following terms:
>
> > 1. If the Contractor has been under contract with the Company for more than one year and less than four years, Contractor can purchase the Book of business at .5 times the gross new and renewal commissions from the Book of Business in the 24-months immediately preceding Contractor's termination of this Agreement.
> >
> > 2. If the Contractor has been under contract with the Company for more than four years and less than five years, Contractor can purchase the Book of Business for .9 times 1/2 the gross new and renewal commissions from the Book of Business in the 24-months immediately preceding Contractor's termination of this Agreement.
> >
> > 3. If the Contractor has been under contract with the Company for more than five years and less than six years, Contractor can purchase the Book of Business for .8 times 1/2 the gross new and renewal commissions from the Book of Business in the 24-months immediately

DocuSign Envelope ID: 9E7008F6-09ED-4BE1-9996-1FADC02247CF

preceding Contractor's termination of this Agreement.

4. If the Contractor has been under contract with the Company for more than six years and less than seven years, Contractor can purchase the Book of Business for .7 times 1/2 the gross new and renewal commissions from the Book of Business in the 24-months immediately preceding Contractor's termination of this Agreement.

5. If the Contractor has been under contract with the Company for more than seven years and less than eight years, Contractor can purchase the Book of Business for .6 times 1/2 the gross new and renewal commissions from the Book of Business in the 24-months immediately preceding Contractor's termination of this Agreement.

1.4   If the purchaser is under contract with Company and at the same commission level of Company Compensation as Contractor with Company the transfer/sale provisions of Section 1.3 shall not apply.  If the transfer or sale of the Book of Business is to the Contractor's heirs, if the heirs are under contract or agree to enter into an Independent Contractor Agreement with the Company, the transfer/sale provisions of Section 1.3 shall not apply.  Company shall be entitled to review all documents pertaining to the sale/transfer of the Book of Business at a reasonable time and place.

1.5   Contractor will have 30-days to move the Book of Business from the Company's CMS. Company shall continue to charge the Contractor at the split Contractor was receiving at the time of termination until the Book of Business is removed from the CMS.

1.6   Non-Disclosure, Non-Competition, and Non-Solicitation Condition to Payment.

As to business written by Contractor with Company's Carriers during the term of

DocuSign Envelope ID: 9E7008F6-09ED-4BE1-9996-1FADC02247CF

this agreement.   Contractor's breach of Sections 2.1, 2.2, or 2.3 of the
**Independent Contractor Agreement** shall relieve Company of its obligation to
pay the consideration set forth in Section 1.1.

1.7    Payment of Chargebacks, Servicing Expenses, Costs Subject to Setoff.  Company
will setoff Chargebacks, servicing expenses, and all reasonable costs incurred by
Company to service the Book of Business against any payments due Contractor.

1.8    Company Payment Procedures.

(a)  If earned, Company shall pay the Contractor monthly on the earned amount by
issuing a check in the payment amount.  If any payment date hereunder falls on a
day that is a Saturday, Sunday or holiday on which Company is closed, such
payment shall be due on the next day on which Company is open for business.

(b) If Company determines that payment is not due because the applicable conditions
under Paragraphs (ii) exist, or have been breached under Paragraphs (iii), and/or (iv),
within 10 business days of such determination Company shall provide Contractor
with a notice of such determination, which notice shall provide comprehensive detail
to support Company's determination. Contractor shall have the right to audit relevant
books and records of Company, as maintained by Company during the relevant
period or periods to verify the accuracy of Company's determination.

Such audit rights shall be subject to reasonable time, place and manner restrictions
imposed by Company.  If Contractor delivers a written notice ("Notice of Dispute") to
Company stating that Contractor objects to Company's determination that payment is not
due, and explaining in reasonable detail the basis for such objection, Contractor and
Company will attempt to resolve and finally determine and agree upon whether the

BOOK OF BUSINESS
(REVISED 8/28/2014)                              5

DocuSign Envelope ID: 9E7008F6-09ED-4BE1-9996-1FADC02247CF

condition(s) have been satisfied.  If Company and Contractor are unable to agree within 60-days after delivery of the Notice of Dispute, the dispute will then be submitted to arbitration under the arbitration provisions of the **Independent Contractor Agreement**.

1.9     Contractor will retain a security interest in the Book of Business until all sums to be paid to him under this Section have been paid in full. Contractor shall release his/her security interest upon Company's complete performance under this Agreement.

1.10    Subject to the Company exercising its right to purchase Contractor's interest in Contractor's Book of Business, Contractor agrees to execute a Bill of Sale and other documents as may be required to transfer Contractor's interest in the Book of Business to Company.


**Signature Page Follows**


Dated this ___3rd___ day of ___October___, 20 __14____.


**Pacific Crest Services, Inc.**

By: _____
Shawn G. Webb
President


**Contractor:**

John Andraos

By: _____

BOOK OF BUSINESS
(REVISED 8/28/2014)                                              6



EXHIBIT C

### John Andraos

#### Book Deflation

**Book as of 01.01.2017**

| Row Labels | Count of Policy# | Sum of ACPrem |
|---|---|---|
| Travelers | 144 | $291,890.20 |
| Allied | 94 | $222,158.72 |
| Hartford | 25 | $193,251.00 |
| Safeco | 60 | $118,609.35 |
| C.N.A. | 5 | $49,396.00 |
| Employers | 1 | $20,587.00 |
| Kemper Specialty | 12 | $15,544.03 |
| MetLife | 1 | $1,421.00 |
| Progressive | 3 | $828.27 |
| Grand Total | 345 | $913,685.57 |

**Book as of 06.07.2017**

| Row Labels | Count of Policy#. | Sum of ACPrem |
|---|---|---|
| Travelers | 85 | $165,932.40 |
| Hartford | 22 | $162,370.00 |
| Allied | 57 | $157,244.20 |
| Safeco | 59 | $111,469.54 |
| C.N.A. | 5 | $52,138.00 |
| Employers | 2 | $41,194.00 |
| Kemper Specialty | 14 | $19,631.05 |
| MetLife | 1 | $1,421.00 |
| Progressive | 2 | $747.52 |
| Grand Total | 247 | $712,147.71 |

**Monthly Production Trend**

| ProdDate | # of Items | ACPrem |
|---|---|---|
| 2016-January | 41 | 91,845.80 |
| 2016-February | 37 | 73,266.06 |
| 2016-March | 39 | 91,148.50 |
| 2016-April | 34 | 71,658.46 |
| 2016-May | 42 | 118,533.55 |
| 2016-June | 31 | 85,832.07 |
| 2016-July | 41 | 82,561.74 |
| 2016-August | 31 | 69,754.86 |
| 2016-September | 30 | 81,639.17 |
| 2016-October | 24 | 49,814.16 |
| 2016-November | 24 | 53,680.46 |
| 2016-December | 21 | 140,698.06 |
| 2017-January | 6 | 18,242.14 |
| 2017-February | 16 | 26,277.36 |
| 2017-March | 8 | 32,064.61 |
| 2017-April | 1 | 2,946.26 |
| 2017-May | 4 | 6,980.78 |

| Year to Date John Andraos Policy Activity 6/20/2017 | | |
|---|---|---|
| Row Labels | Count of Policy# | Sum of ACPrem |
| BOR | 21 | $54,702.60 |
| Cancelled | 6 | $40,937.04 |
| Canc-IReq | 21 | $45,003.47 |
| Canc-NPay | 48 | $103,074.71 |
| Expired | 7 | $7,306.88 |
| NonRenew | 2 | $4,782.28 |
| Replaced | 39 | $87,230.76 |
| Grand Total | 144 | $343,037.74 |

| Policy Status Definitions Status Key | |
|---|---|
| Status | Definition |
| BOR | Agent transferred policy to code outside of Pacific Crest Services with same carrier |
| Cancelled | Cancelled with no notes |
| Canc-Ireq | Insured requested cancellation and policy was placed with another carrier |
| Canc-NPay | Insured did not pay the policy premium resulting in a cancellation |
| Expired | The renewal policy and commissions were not received by Pacific Crest |
| NonRenew | Carrier non renewed policy under Pacific Crest code |
| Replaced | Policy rewritten through another agency outside of Pacific Crest Services with the same Carrier |

